## KNOWLTON v STATE OF FLORIDA
### Case No. (Appeal) 87-3955
Thirteenth Judicial Circuit, Hillsborough County

January 25, 1989

## OPINION OF THE COURT

F. DENNIS ALVAREZ, Chief Judge.

### *MANDATE*

To the Honorable Judges of the County Court, Traffic Division in and for Hillsborough County, State of Florida, Greetings!

WHEREAS, lately in the County Court, Traffic Division, in and for Hillsborough County, State of Florida, the Judgment of said County Court, Traffic Division, in and for Hillsborough County, Florida, was rendered on February 26, 1987 as may be found by the inspection of the record, which was brought into this Honorable County by virtue of an Appeal from the Judgment of the County Court, Traffic Division, in

and for Hillsborough County, Florida, agreeable to the laws of said State in such case made and provided, fully and at large appears:

WHEREAS, after is was considered, adjudged, and ordered by the Circuit Court, Criminal Division, in and for Hillsborough County, Florida, on January 25, 1989, that the Judgment of the County Court, Traffic Division, be and the same is hereby Affirmed. A copy of the Opinion is attached and made a part hereof.

YOU ARE HEREBY COMMANDED that further proceedings be had in accordance with said Opinion, the rules of this Court and the laws of the State of Florida.

WITNESS the Honorable F. DENNIS ALVAREZ, Judge of the Circuit Court, and the seal of said Court this the 16th day of February, 1989. A.D.

## APPEAL FOR THE COUNTY COURT

The appellant, Horace A. Knowlton, III, raises an appeal from a judgment of the county court. Knowlton alleges that his convictions for Driving Under The Influence pursuant to Section 316.193, Florida Statutes (1985) and Resisting Arrest Without Violence pursuant to Section 843.02, Florida Statutes (1985) should be overturned because the judgment was based on the following errors: (1) that there was insufficient evidence as a matter of law to sustain a conviction of resisting arrest without violence; (2) that he was deprived of his right to due process of law and compulsory process; (3) that the evidence was insufficient to sustain a conviction for D.U.I.; (4) that the trial court erred in excluding as irrelevant certain expert testimony which, through reverse interpolation, would have demonstrated that the appellant's behavior was not due to intoxication; (5) that the trial court abused its discretion by sustaining the State's objection which prevented Knowlton from introducing evidence of good character; and (6) that the trial court improperly sustained the State's objection to the testimony concerning Knowlton's condition and appearance at least four hours after the arrest.

## SUMMARY OF FACTS

On the 28th day of June, 1986, Knowlton was charged and arrested for Driving Under the Influence and Resisting Arrest Without Violence. Knowlton pled not guilty to the charges on July 7, 1986. Judge Fleischer conducted the evidentiary hearing and denied Knowlton's Motion to Dismiss and his Motion to Suppress. Knowlton was tried by a jury and found guilty on February 19, 1987.

On the night of the arrest, police officers in a marked car, while

88

parked on the corner of Horatio Street and Henderson Boulevard were informed by a motorist that a yellow Mercedes was crossing from one side of Kennedy Boulevard to another. The officers responded to the call and when they arrived at the scene Knowlton was stopped at the Kennedy and Henderson traffic signal. Knowlton remained at the traffic signal for two cycles of signals while staring out into space. The police officers turned on their emergency lights and approached Knowlton. The officers knocked on the window of the car and requested that Knowlton exit the car. Knowlton twice failed to respond to the officers. The officers then opened the door and asked Knowlton to exist the car. The officers detected a moderate odor of alcohol coming from Knowlton and also noticed that his eyes were bloodshot. Upon exiting the car, Knowlton leaned on or used the car for standing support.

Knowlton was administered two field sobriety tests. Knowlton failed the first two field sobriety tests and refused to be administered the third test. The arresting officers caught Knowlton twice to prevent him from falling while conducting the first field sobriety test. Knowlton fell backwards while the officer was attempting to convince him to perform the third field sobriety test. Knowlton refused to submit to the chemical test. The officers then informed Knowlton of his constitutional rights and Knowlton read the rights back to the arresting officers. After being advised that he was under arrest, Knowlton placed his hands in his pockets, stiffened his arms, and began to turn around in a circle. The officers requested that Knowlton remove his hands from his pockets and he refused. The officers placed Knowlton on the ground and arrested him. Knowlton informed the police officers at Central Booking that he was suffering from insulin shock reaction and that he needed treatment.

Knowlton was released on his recognizance at approximately 5:30 a.m. on June 28, 1986. He was taken to Memorial Hospital by a friend and his sister. Knowlton was examined by a physician at the hospital at 6:00 a.m. on June 28, 1986. The physician ran a series of tests and concluded that Knowlton's blood glucose level was 59. The physician further conceded that Knowlton's blood alcohol level was .0% at the time of examination.

### I. There was sufficient evidence as a matter of law to sustain a conviction of Resisting Arrest Without Violence.

The defendant was convicted of Resisting Arrest Without Violence, pursuant to Florida Statutes, Section 843.02 (1985). The Statute outlines the requirements for Resisting Arrest Without Violence and states in pertinent part that,

Whoever shall obstruct or oppose any officer in the legal execution of a legal process or in the lawful exercise of a legal duty without offering or doing violence to the officer or person of the officer shall be guilty of a misdemeanor of the first degree. Florida Statutes, Section 843.02 (1985).

In order to find one guilty of Resisting Arrest Without Violence, two essential elements must exist: (1) the person must resist or obstruct an officer, and (2) the resistance or obstruction must occur when the officer is performing a lawful exercise of a legal duty. The facts of the instant case clearly indicate that Knowlton's actions fall within the statutory purview of Florida Statutes, Section 843.02 (1985).

The arresting officers were in the lawful exercise of a legal duty when they arrested the defendant. The officers had probable cause to believe that the Appellant was driving under the influence of alcohol. The probable cause was based on the Appellant's failure of two field sobriety tests. The Appellant resisted arrest when he placed both of his hands in his pockets when the officers tried to arrest him. The act of placing one's hands in one's pockets after being ordered to extend one's hands for handcuffing is in and of itself, resisting an officer.

It is well settled that one may resist, obstruct, or oppose an officer without committing battery. For example, a person might struggle with an officer or refuse to present one's hands for handcuffing or refuse to lie down when ordered or refuse to get in a squad car when ordered to do so. *Savage v State,* 494 So.2d 274 (Fla. 2d DCA 1986). In *Savage,* the court held that the defendant resisted arrest without violence notwithstanding his contention that he was only struggling to breathe after choking from swallowing a cellophane wrapping. Courts have held that locking oneself inside a car to prevent an arrest is resisting arrest without violence. *Dreske v Holt,* 536 F.2d 105 (5th Cir. 1976). Giving of a false name to a police officer is sufficient evidence for a conviction of resisting arrest without violence. *Crain v State,* 500 So.2d 728 (Fla. 2d DCA 1987). Accordingly, the issues Knowlton raises concerning his arrest are without merit.

## II. *Knowlton was not deprived of his right to due process of law and compulsory process.*

Knowlton asserts that he was deprived of his right to due process of law because the arresting officer failed to examine him for a medical alert device. Knowlton relies on Florida Statutes, Section 901.215 (1985) and contends that the statute places an affirmative duty on an arresting officer to examine Driving Under the Influence suspects for medical alert information.

Knowlton's contention that his due process rights were violated is also without merit. There is no case on point which addresses the issue of whether the failure to examine a person suspected of being intoxicated for a medical alert device is a violation of due process. The Florida Statutes, however, addresses the action to be taken by an arresting officer if the arrestee appears inebriated. The statute provides in pertinent part,

> an arresting officer should check a defendant for a medical alert device if the defendant appears to be inebriated and is incapable of controlling his physical functions; and to offer assistance to such person in seeking medical aid and treatment.

Florida Statutes, Section 902.215 (1985)

The failure to examine an allegedly inebriated person for the possession of a medical alert device, in and of itself, is not a violation of due process per se. Moreover, Section 901.215 Florida Statutes (1985) does not stand for the proposition that the search conducted for a medical alert device is solely to produce or preserve evidence. Knowlton wrongly asserts that the statute is intended to insure that medical evidence gained by compliance with the statute is both relevant and material to any charges arising out of the arrestee's physical appearance. This contention is erroneous and meritless and does not reflect the intent of the Florida Legislature.

### III. *The evidence was sufficient to sustain a conviction for Driving Under the Influence.*

Knowlton contends that the evidence used for the conviction was circumstantial and was not sufficient as a matter of law to sustain a conviction for Driving Under the Influence. The Florida Supreme Court has set forth the standard of review to determine whether circumstantial evidence is insufficient to sustain a conviction. In *Toole v State,* 472 So.2d 1174 (Fla. 1985) (citing *McArthur v State,* 351 So.2d 972 (Fla. 1977) the Court held that the standard to be applied to support a conviction based on circumstantial evidence is that the evidence must be inconsistent with any reasonable hypothesis of innocence. *Toole* further illustrates that the determination is for the jury and where there is competent and substantial evidence to support the jury verdict, that determination will not be disturbed by the court. *Toole* at 1176 (citing *Heiney v State,* 447 So.2d 210, 212, (Fla. 1984) cert. denied, 469 U.S. 920, 105 S.Ct. 303, 83 L.Ed.2d 237 (1984).

Here, the evidence presented was consistent with the reasonable hypothesis that Knowlton was intoxicated. The jury rejected Knowl-

ton's hypoglycemia argument after the presentation of all evidence. Direct evidence presented by the state concerning the police officers' encounter with Knowlton indicated that he had an odor of alcohol on his breath at the time of arrest, and that he failed two field sobriety tests. Further, the testimony of the arresting officers established that Knowlton was able to recite his constitutional rights, refused a third field sobriety test and demanded to be taken to jail. Expert testimony presented at trial clearly established that Knowlton's actions prior to and during the arrest were not of the nature of actions or symptoms normally associated with hypoglycemia.

Knowlton relies on *McArthur v State,* 351 So.2d 972 (Fla. 1977) for the proposition that where the State's proof is entirely circumstantial, even if evidence strongly suggests guilt, a conviction cannot be sustained unless the evidence is inconsistent with any reasonable hypothesis of innocence. The State's proof is not purely circumstantial; direct evidence and the aforementioned circumstantial evidence were presented to substantiate the State's theory. The circumstantial and direct evidence presented by the State is clearly inconsistent with any reasonable hypothesis of innocence. Therefore, this issue is without merit and the conviction must be sustained. *McArthur v State,* 351 So.2d 972 (Fla. 1977). As a matter of law there was sufficient evidence to convict Knowlton of the crime of Driving Under the Influence.

IV. *The trial court did not commit reversible error by sustaining the State's objection and disallowing the defense counsel to solicit an opinion from a medical expert which was based upon facts that were not entered into evidence.*

Generally, Florida Courts have held that a hypothetical question is improper if any of the basic facts contained in the question are not supported by competent facts in the record. Florida Statutes provides a basis whereby experts are allowed to render opinions. The Florida Evidence Code states in pertinent part that,

The facts or data upon which the expert bases an opinion or inference may be those perceived by, or made known to, him at or before the trial. If the facts or data are of a type reasonably relied on by experts in the subject to support the opinion expressed, the facts and data need not be admissible in evidence.

Florida Statutes, Section 90.702 (1987).

Although the statutes permit a medical expert to form an opinion based on facts and data reasonably relied on by experts in their field, case law places limitations on the questions which may be answered by

92

a medical expert. Courts have held that a hypothetical question is improper if any of the basic facts contained in the question are not supported by competent evidence in the record. *Seaboard Coastline Railroad v Welfare,* 350 So.2d 476 (Fla. 1st DCA 1977). Moreover, it is a reversible error to permit an expert witness to answer a hypothetical question which omitted a material fact. *Carnival Cruise Lines Inc v Rodriquez,* 505 So.2d 550 (Fla. 3d DCA 1987). The trial court has the discretion to determine whether the omission of a fact in the question is sufficiently significant to prohibit the answer. *Steiger v Masschusetts Casualty Insurance Co.,* 273 So.2d 4 (Fla. 3d DCA 1973).

Knowlton urges that it was reversible error not to permit the expert witness to give the reasons why he believed Knowlton's behavior at the time of arrest was consistent with hypoglycemia reaction and not alcohol intoxication. Knowlton relies on *Fridovich v State,* 489 So.2d 143, 146 (Fla. 4th DCA 1986) for the proposition that Knowlton had the right to present live testimony in support of his theory of defense. Knowlton, in the instant case, sought to illicit the following opinion from the expert, "Can you tell me or do you have an opinion based on those assumptions of the amount of alcohol Mr. Knowlton would have had to have in his bloodstream at 6:30 in the morning when the blood was drawn?"

The appellee objected and the trial court sustained the objection.

The trial court properly sustained the appellee's objection because the question was based on facts that were not entered into evidence. Knowlton's blood alcohol level at 1:30 was not entered into evidence. Therefore, it would have been inconsistent to assume that Knowlton had a positive blood alcohol level of .10% without consuming alcohol. Even though the hypothetical question posed to the expert may have been the heart of Knowlton's argument, the court has the discretion to allow or disallow hypothetical questions which includes facts that are not admitted into evidence. The court did not abuse its discretion by preventing an expert to answer a hypothetical question based on facts that were not entered into evidence. *Jent v State,* 408 So.2d 1024 (Fla. 1981), cert. denied, 457 U.S. 111, 102 S.Ct. 2916 (1982).

*V. The trial court did not abuse its discretion by sustaining an objection which prevented Knowlton from introducing evidence of Knowlton's good character for truthfulness and veracity.*

It is well settled that when a criminal defendant takes the witness stand in his own behalf he places his credibility at issue. Florida Rules of Evidence provides however, that a defendant may not offer evidence of good character for truth and veracity unless he has testified as a

witness and his credibility has been attacked by the prosecution. The Florida Evidence Code states in pertinent part that,

Evidence of a truthful character is admissible only after the character of the witness for truthfulness has been attacked by reputation evidence.

Section 90.609(2) Florida Statutes (1985)

The defense sought to call two attorneys as character witnesses to testify to Mr. Knowlton's reputation for honesty and truthfulness in the community. The trial court correctly sustained the State's objection to the introduction of evidence of Knowlton's good character because his bad character had not been addressed. Knowlton's assignment of error is without merit.

### VI. *The trial court properly sustained the State's objection to the testimony concerning Knowlton's condition at least four hours after the arrest.*

The trial court did not abuse its discretion in sustaining the State's objection concerning an evaluation of Knowlton by a friend five hours after the arrest. Knowlton's friend picked Appellant up from the county jail and drove him to the hospital. The Appellant sought to introduce testimony based upon the appearance and smell of the Appellant hours after the arrest. The trial court correctly decided that the statements made by the witness concerning the appearance of Knowlton approximately five hours after the arrest was irrelevant. The general rule that remoteness in the point of time goes to the weight of the evidence rather than admissibility of the evidence applies except when the time is fo far removed as to deprive the circumstances of any evidentiary value. *Gallagher v L.K. Restaurant & Motels, Inc.,* 481 So.2d 562, 563 (Fla. 5th DCA 1986). The court has the discretion to exclude relevant evidence which is remote and misleads a jury. *Hitchcock v State,* 413 So.2d 741, 744 (Fla. 1982), cert. denied, 459 U.S. 960 103 S.Ct. 274, 74 L.Ed.2d 213 (1982). In the instant case, the trial court did not abuse its discretion by prevent the introduction of evidence which did not have any evidentiary value.

### CONCLUSIONS OF LAW

1. There was sufficient evidence as a matter of law to sustain a conviction of Resisting Arrest Without Violence.

2. Knowlton was not deprived of his right to due process of law and compulsory process.

3. The evidence was sufficient to sustain a conviction for Driving Under the Influence.

4. The trial court did not commit reversible error by sustaining the State's objection and disallowing the defense counsel to solicit an opinion from a medical expert which was based upon facts that where not entered into evidence.

5. The trial court did not abuse its discretion by sustaining an objection which prevented Knowlton from introducing evidence of his good character for truthfulness and veracity.

6. The trial court properly sustained the State's objection to the testimony concerning Knowlton's condition at least four hours after the arrest.

The decision of the lower court is hereby AFFIRMED.

DONE AND ORDERED in Chambers in Hillsborough County, Florida, this 25th day of January, 1989.

*Editor's Note:* An appeal was filed to the Second District Court of Appeal on March 8, 1989. As of May 15, 1989, no opinion had been delivered.