BENTON, J.
Anthony Jerome Cromartie appeals his manslaughter conviction and resulting 15-year sentence as a prison releasee reoffen-der, assigning as grounds for reversal the trial court’s exclusion of evidence of the victim’s blood-alcohol level at the time the appellant hit him and the victim fell, which led, some days later, to the victim’s death. Mr. Cromartie argues on appeal, as he did below, that the excluded evidence was relevant to his theory of self-defense.[1] We agree that the evidence was relevant to his theory of self-defense, reverse for that reason, and remand for a new trial.
The State moved in limine to exclude any evidence of the victim’s blood-alcohol level at the time of the affray.[2] Defense counsel argued evidence of the victim’s blood-alcohol level was relevant because the victim’s behavior, as related by Mr. Cromartie, was consistent with someone who had been drinking: “He had too much to drink and decided to harass [Mr. Cro-martie] and he wouldn’t take no for an answer, [so] he pulled [Mr. Cromartie] and turned him around as if to hit him.” Over objection, the judge granted the motion in limine, however, reasoning: “I have not really heard anything from anybody ... that he was acting in any particular way as if he were under the influence of alcohol....”
*342 Mr. Cromartie and Carvin McGruder were involved in a physical altercation on the evening of December 30, 2005, outside of Ray’s Soul City in Pensacola. Jennifer Butler testified the victim fell to the pavement after the appellant hit him. According to Ms. Butler, a passenger in Mr. McGruder’s car, Mr. Cromartie stood outside the car quarreling with Mr. McGru-der, who was in the driver’s seat, until Mr. McGruder stepped out of the car, shortly after which Mr. Cromartie punched him one time.
Deputy Hendershott testified that Mr. Cromartie reported the victim had placed two hands on him, attempting to spin him around the better to confront him, before he landed the blow. When Deputy Hen-dershott questioned Mr. Cromartie about the incident, he told him that “while he was at Ray’s Soul City establishment Mr. McGruder ... [was] jerking or teasing for lack of a better term over his clothing attire” and that, once outside, Mr. McGru-der “grabbed in a violent manner at which time he basically defended himself by taking his left hand and striking Mr. McGru-der in the jaw area.”
Also in the State’s case, Dr. Andrea Minyard testified the autopsy she performed revealed a subdural hematoma on the right side of the victim's brain. She testified that “[i]t would have to be a very strong, forceful punch” for a fist to cause the hematoma, and she said such a blow was an unlikely cause of the hematoma. Typically, Dr. Minyard testified, a single punch is not enough to cause death. She opined the most likely scenario was that the victim lost consciousness and fell to the pavement, sustaining the fatal injury when his head struck the pavement.
In the defense case, Mr. Cromartie admitted the single blow to which the State’s witness had testified. According to Mr. Cromartie, when he stepped outside the club that night, the victim was “grabbing” him and “snatching on [him] in a violent way.” He said he asked Mr. McGruder some three times to stop. Mr. Cromartie testified that “when I kept asking him, he went to throw me down and that’s when I hit him.”
After this testimony, defense counsel asked the trial judge to reconsider his ruling excluding evidence of the victim’s blood-alcohol level, but the learned trial judge adhered to his prior ruling. This was error. “As a general rule, a trial court’s ruling on the admissibility of evidence will not be reversed, absent an abuse of discretion. However, a court’s discretion is limited by the evidence code and applicable case law. A court’s erroneous interpretation of these authorities is subject to de novo review.” McCray v. State, 919 So.2d 647, 649 (Fla. 1st DCA 2006) (citations omitted).
“All relevant evidence is admissible, except as provided by law.” § 90.402, Fla. Stat. (2005). “Relevant evidence is evidence tending to prove or disprove a material fact.” § 90.401, Fla. Stat. (2005). “When a defendant has competent evidence to support his theory of defense, the trial court denies the defendant his due process rights guaranteed by the constitution when he is prohibited from presenting that defense to the jury.” Sluyter v. State, 941 So.2d 1178, 1181 (Fla. 2d DCA 2006) (citing Washington v. State, 737 So.2d 1208, 1221 (Fla. 1st DCA 1999)). The trial court abused its discretion by failing to reverse its earlier ruling in light of Mr. Cromartie’s testimony about Mr. McGru-der’s aggression, which the jury might well have concluded did indicate the victim was “acting in a[ ] particular way as if he were under the influence of alcohol.... ”
Mr. Cromartie’s theory of defense was that Mr. McGruder was acting in an ag *343 gressive, threatening manner, under the influence of alcohol, and that he was only defending himself when he punched the victim a single time. Self-defense is a statutorily recognized theory of defense:
A person is justified in using force, except deadly force, against another when and to the extent that the person reasonably believes that such conduct is necessary to defend himself or herself or another against the other’s imminent use of unlawful force. However, a person is justified in the use of deadly force and does not have a duty to retreat if: (1) He or she reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself or another or to prevent the imminent commission of a forcible felony[J
§ 776.012, Fla. Stat. (2005). The jury was properly instructed on the appellant’s theory of self-defense, but the jury was deprived of evidence that it might have found made the appellant’s version of events credible, even in the absence of corroborating witnesses.
Appellant was entitled to present evidence tending to prove that he acted in self-defense against a drunken aggressor. Sluyter, 941 So.2d at 1181 (citing Washington, 737 So.2d at 1221). Inebriation, the jury could reasonably have concluded, might have led to aggressiveness of the kind Mr. Cromartie recounted. Particularly because Mr. Cromartie’s testimony— and his statement to Deputy Hender-shott — were not corroborated by other witnesses, evidence of the victim’s intoxication could have been critical in bolstering his theory of defense.
The trial court “denie[d] [Mr. Cromar-tie] his due process rights guaranteed by the constitution when ... [it] prohibited [him] from presenting [possibly critical evidence in support of his] defense to the jury.” Id. “A party is entitled to present evidence upon the facts that are relevant to his theory of the case, so long as that theory has support in the law.” Zamora v. State, 361 So.2d 776, 779 (Fla. 3d DCA 1978) (citing Steiger v. Mass. Cas. Ins. Co:, 273 So.2d 4 (Fla. 3d DCA 1973)). Evidence that the victim was intoxicated would tend to show that Mr. Cromartie reasonably believed he faced a threat of great bodily harm, and so acted reasonably in defending himself which, by all accounts, entailed no more than striking Mr. McGruder once with his fist.
Reversed and remanded.
DAVIS and PADOVANO, JJ., concur.

. Mr. Cromartie argues alternatively that the blood-alcohol evidence was relevant to show that inebriation might have explained an unrelated fall that resulted in Mr. McGruder's death. But there was no evidence at trial that the victim fell, except immediately after the appellant hit him.

. Defense counsel sought to introduce medical records which, according to defense counsel, documented the victim's blood-alcohol level of .19 (grams of alcohol per 100 milliliters of blood) at the time he was admitted to the hospital. The state agreed the issue was preserved for appeal.